Good morning, Honorable Judges of the Circuit. John Lawrence, on behalf of Lemoore Nail Products, Inc., appellant in this matter. May it please the Court. I think the instant case presents a classic collision between the California SLAPP practice statute and third-party practice, both under California law and as well under the Federal Rules of Civil Procedure, which are designed to encourage the parties to consolidate all their claims together and have all the issues that arise out of a common nucleus of operative facts decided at one time in one court. I think that's the express purpose that the waiver that was presented in paragraph 21 of the settlement agreement was inserted in that document, which allows the parties to go ahead and handle a dispute over the application of that release agreement in the normal course, as opposed to the extradited accelerated SLAPP procedure, which of course, other than under exceptional circumstances, does not allow for discovery. It does not allow for an extended period for the development of the facts in the argument. I can't remember. Was there discovery here? Was this treated more or less as if it were a 12b6? No discovery. It went straight to... So in effect, despite its being SLAPP, it's basically a 12b6 as to your two claims back against the plaintiff, LeMoon. I think that would be one way to look at it, Your Honor. Yeah, I think either that or a very, very truncated summary judgment type procedure. Well, I think the California Supreme Court in a couple of cases back in 2002, the Sidiou-Khakdi case and the Nivellier-Slaton case, addressed situations that are intangible in the case that are here today. First of all, in the Nivellier case, the California Supreme Court indicated that an express waiver would allow for the SLAPP statute not to apply and indeed set forth a particular procedure in that case, and that stated that any such action would presumably involve at a minimum the pleading and proof of the alleged agreement, which we have here, and a requirement that the alleged agreement be presented by affidavit, which we have here, stating the facts upon which the claim is based, which we have here. Under those circumstances, it's our position that the case should have proceeded in the normal course, just as any compulsory cross-claim would. You know, you used the term cross-claim. Both parties used the term cross-claim, as did the district judge. If the third-party defendant is claiming back against the original plaintiff, under Rule 14, it's called a claim. Okay. But it doesn't matter. I understand. I apologize for my more extensive California practice, because in California, they're all called cross-claim. Everything. The dog catcher called it a cross-claim in California. I understand that. But it was a compulsory claim under Rule 13a, because it arose from the common nucleus of operative facts, and it was against the party that was opposing, which was LeMun, through Alfalfa, was an opposing party. So I'm not sure it was compulsory, but one way or the other, we have the claim. Yeah. Okay. And at the very minimum, it was a permissive claim. And the claim in equity was attached to that for equitable indemnity. The gist of that claim being with respect to all the goods that we sold before, assuming we sold them when they were infringing, we've paid that, we've settled that, and if I'm going to be subject to a claim back around from the third party, then I ought to be entitled to some kind of credit for that with respect to the damages that I've already paid. Otherwise, you have a distributor like LeMun going down the line collecting additional damages over and above what it would have obtained simply by its one sale of the goods at issue. That's what it was complaining about in the original case. We sold these goods, we didn't make a profit. That profit was paid through the settlement, and now they're pursuing another distributor, and again trying to seek that same profit again. So when LeMun is drug into the We have some kind of an offset here. If I'm going to be held liable to Alfalfa, then gosh-already, that was something that I already paid, and I should get credit for it. And that's the equitable indemnity claim, which I would argue, Your Honor, is completely outside the scope of the California FLAP statute. And the analogy I would make is, if there had not been a third-party complaint filed against LeMun in the instant action, but rather Alfalfa had waited until it had paid or there had been a judgment against it, and then brought a claim for indemnity over against LeMun, that action would not have been an action claiming that LeMun had, excuse me, there's too many L's in this case, that LeMun had acted in furtherance of his constitutional rights by bringing an action. No, it would have been, we've been subject to liability. We think that liability should be indemnified by LeMun because they've already been paid. FLAP statute would not have been implicated at all. So given that statute, or that application, lack of application of the statute in that situation, I think the procedural posture is the only thing that has brought the FLAP statute down the pond. How do we know there's a double payment here? We don't know when the settlement occurred and money was paid. And how do you know it was for the goods that got into third-party hands before the settlement? Well, the evidence before the court by Mr. Huang, the executive officer of LeMun, is that we've abided by the settlement agreement. We paid the money and we have not shipped any more allegedly infringing goods. So therefore, the goods had to be, if they were at all goods that were originally originated from LeMun, had to be goods that were shipped prior to the settlement in May of 2008. So that brings us, Your Honor, has brought us to the issue of the scope and interpretation of the settlement agreement. And I think Justice Traynor of the California Supreme Court said it very well in the G.W. Thomas Pacific Dredge case long ago, that a judge may think that the language of an agreement is clear, but that doesn't mean that the parties to the agreement didn't have a different understanding, and that the parties are entitled to take a look at the extrinsic evidence to determine whether or not there is an ambiguity here and whether or not the parties really intended that all the claims that related to the goods that were transferred prior to the settlement were extinguished as part of the extinguishment of unknown claims that we have here. And I would suggest to the Court that whose claims were extinguished? In other words, why would the settlement agreement apply to an independent third party? Well, Your Honor, I said the settlement agreement applies to the goods that were identified as being infringing prior to the settlement. Otherwise, you have, as I said earlier, LeMun being able to pursue independent parties and securing additional damages well beyond that which it has already agreed to resolve these claims for. And that has to end somewhere. And I would suggest to Your Honor that it ends when a party has waived unknown claims. That puts an end to the situation. I understand your general equity concerns. I mean, that seems a valid concern to have, but I don't understand how LeMun breached the contract. How do you get to that point specifically legally, other than your general concerns about the equities of the situation? Okay. I have two claims, breach of contract and implied equity. The breach of contract would be by bringing the claim for recovery on goods that have been transferred prior to the settlement and were covered under the settlement for which they were paid under the settlement. That would be my theory there. And I would ask the Court, if it's not clear in the pleadings that were presented to the Court below, that we be given an opportunity to amend and more clearly plead them. With that, Your Honor, if I may reserve the floor. Yeah. Let's hear from the other side, and then you've got some time to respond. Thank you very much, Your Honor. Good morning, Your Honors. May it please the Court. My name is Dan Taylor. I am counsel for the plaintiff and appellee, LeMun Incorporated. First off, as a threshold matter, there is no case currently pending in the District Court. The trademark infringement action for the independent infringing acts of defendants Alfalfa and Regal has been settled and dismissed. So have the indemnity claims have also been dismissed without prejudice, and there are separate actions. Yeah, when you say the indemnity claims, which claims are you talking about? The indemnity claims by Alfalfa against both Lemur and the other party who is not here at the appeal today, Coors. Oh, I see. Right, right. Those have been dismissed without prejudice, and there are state law claims pending regarding various indemnity rights that aren't really at issue here today. I see. So at the moment, we have no pending claim against Lemur. I'm going to make sure I get my L's right. And the premise for the Lemur claims back against LeMun is they want money so that it's kind of offset for what they've paid. But if there's no claim pending against them and that was dismissed without prejudice, then what? Well, there's a claim in state court regarding indemnity rights from Alfalfa that were assigned to LeMun. However, there's no claim in federal court because the whole hook for federal jurisdiction to begin with was the Lanham Act and the trademark claims that were brought by LeMun Incorporated versus Alfalfa and Regal. So if this court were to remand, I don't know that there is a court with jurisdiction to remand the case, too. So LeMun has the Alfalfa's claims against Lemur assigned to it? Yes, Your Honor. It's a rather complicated situation, I know, but they essentially conceded the infringing acts and assigned the rights to indemnity if there are any. So such rights as may be available despite the settlement contract by LeMun against the Lemur, those are going forward in state court at this time? Yes, they are, Your Honor. And they're not barred by the settlement agreement? The claims that we brought, and I think that's really the crux of the matter to begin with, is the lawsuit we brought against the independent parties Alfalfa and Regal had to do with their own separate acts of infringement that had nothing to do with the previous settlement agreement between LeMun and Lemur. That settlement agreement between LeMun and Lemur was entered into on May 15th, 2007. There is undisputed evidence in the record at numerous occasions both the admissions of the parties and of Feng Li, who is one of the directors or owners of the Alfalfa, that they were selling these infringing products all the way into September of 2007, several months after this settlement agreement was reached. There's also no dispute that these are the acts of the independent parties Alfalfa and Regal and that each, in a trademark action like this, under Section 32 of the Lanham Act, extends to any person who, without the consent of the registrant, the trademark, uses that mark in the stream of commerce. It's not limited to just the registrant. But as I understand the argument being made by LeMur, which may be totally mooted out as far as we're concerned by the fact that there's no pending claim against LeMur by the third party defendants, but assuming that that claim is still alive in some fashion, what they're arguing to us is, well, the Alfalfa defendants have been sued for various forms of infringing. And they may well be liable for that because they may well have been selling infringing goods. On the other hand, says LeMur, well, they got those infringing goods from us. They got those infringing goods from us before the date of the settlement with you, LeMur. And if a damage judgment goes against us in a third party complaint for indemnification or contribution in the defendant, Alfalfa defendants back against LeMur, if you follow me, they're entitled somehow to compensation from you because that would constitute double payment. What's your response to that? Well, Your Honor, it absolutely would not constitute double payment on any evidence that is presented to this Court in the record or presented below to the district court. Now, you were paid under the original settlement with LeMur, correct? We were paid under the confidential terms of the settlement agreement. There is no evidence in the record showing that that compensated for our lost sales. And it could have been compensation for statutory damages, for their ill-gotten profits by infringing our marks. And each separate defendant who uses in commerce the marks would be separately liable for either statutory damages or their own ill-gotten profits at the expense of our trademark rights. So there's separate and independent liability. And even so, the liability would be continuing after the date of the settlement agreement. But that's not a question. I mean, the question in front of us is not whether the Alfalfa defendants are liable to you, but whether you have already been compensated in the settlement for the goods that Alfalfa has had and has sold. So the question really is what's the settlement mean? I want to make sure I'm clear on the question, Your Honor. In regard to the breach of contract claim, I believe my client absolutely has a right to pursue a trademark infringement action for the subsequent acts of infringement by Alfalfa and Regal. And that in no way could breach a contract for the other clients. If you're referring to the equitable indemnity claim, there's a possibility of a seeking double recovery. For one, in the lower court, there was no mention made in their opposition to our motion to strike anything regarding the equitable indemnity. There was nothing in the record presented to the district court to redeem that claim. And it's unsurprising on that record that the court struck the complaint when they didn't, when they waived any opportunity to actually say anything about it. Second, there couldn't be any double recovery for the reason that we're seeking, we thought damages regarding Alfalfa's acts. If there's indemnity between Alfalfa and L'Amour, that indemnity would rise from a separate right, a different wrongdoing. L'Amour's sale of infringing products to its distributors without telling them, hey, you know, these are infringing products, and for them relying on the stuff that was provided. Those claims were not at issue in the original lawsuit. Alfalfa and Regal never came up during the original lawsuit between L'Amour and L'Amour. And if, in a sense, if our rights are waived, then that would be waiving Alfalfa's right to have sought indemnity for it being on the hook because of L'Amour's bad acts. Is there anything about the settlement that would permit you to discover whether it covered particular goods that were held by L'Amour or previously sold by L'Amour? There is nothing in the settlement agreement that identifies that this applies to a particular class of goods or that we're settling something regarding just a certain set of goods. We were settling the case regarding the acts alleged against L'Amour, which was the general idea that they were selling in commerce marks bearing a nearly identical and confusingly similar mark to my client's LM and original LM trademarks for Nailtip products. And was the charge in the original complaint that they were selling these at retail, or did the original complaint charge also that they were selling them to distributors who would then in turn sell them at retail, which is obviously what's going on with the Alfalfa defendants? In the original complaint, I believe it was alleged both ways. I'm not 100 percent certain that we knew that they were selling it wholesale and they might have also been selling it retail. We knew, in fact, that they were selling it and advertising on their websites. I should know this, but I do not. Do we have in the record in front of us the narrative that you have now supplied to us in terms of what the settlement has been, the suit going on in the state court, and so on? I confess I don't know that in my own head and I don't know whether it's correct. It has not been briefed in the briefs by the parties. It has been fairly recent developments that have been going on contemporaneously along with the briefing. Could I ask the parties to get together with a joint letter simply to describe what has happened so that we know this? Absolutely, Your Honor. With citations to filings and so on? Absolutely. Thank you. Also, just in regard to the equitable indemnity claim as well, the equitable indemnity claim that was pled did not request anything regarding double recovery. They requested reimbursement for attorney's fees because of having to defend an action regarding the settlement agreement that they alleged was breached. I think it's fairly clear that the Alfalfa defendants were not a party to that agreement and we could not have breached that contract by filing a separate lawsuit for their separate acts of infringement that occurred on and after the date of that settlement. If I may briefly address just the issue on leave to amend, I believe that leave to amend in this case is not appropriate for several reasons. First, the appellate's never asked for it in the lower court. Second, even if under the liberal amendment standards of Rule 115, amendment is not allowed if it would be futile. And I believe it would be futile for them to amend this claim in any way to state a cause of action. They have not at any point shown what facts they could have pled that could arise to a breach of contract on the present record. Not once has the appellate shown us that there is a way to change its claims as to state a cause for breach of contract out of my client exercising its protected right to seek redress in the courts of law by filing a lawsuit to protect its trademarks against the independent infringing acts of the third party's Alfalfa and Regal. Because it would be futile to amend, there is no necessary right that they have to make an amendment and put my client through the expense of dealing with this again, and that's flatly contrary to the purpose of California statute. Okay. You're over time. If you'd like to sum up. Thank you, Your Honor. Thank you for your time. Okay. Thank you. Thank you. Thank you, Your Honor. Just a couple of points. Your Honor raised an interesting question, where does this case go if it's landed? And I think that justice would require that it go back to the trial court for determination on the issues that were raised. I've got a slightly different question. If, in fact, it is true that the claims brought as third-party claims against your client by the Alfalfa defendants have been dismissed without prejudice, so they are no longer pending in the district court, why isn't your claim or your two claims that are, of course, as a result of those third-party claims, why aren't your claims against Lemoon moot? Well, two points. There's been no recovery against you by the Alfalfa defendants on a third-party complaint. Those complaints have been dismissed without prejudice. They're not now pending. Two points. First point is we've been asked to pay attorney's fees with respect to the slap nature. We were assessed $25,000 in attorney's fees that we indicate we believe we should not be charged for. That's item number one. But more importantly, item number two is I think justice requires that there be a venue for the determination and interpretation of the scope of that settlement agreement and whether, in fact, Lemoore was subjected to the cost and the expense and the defense of defending that claim while it was there because we can't raise that issue in the Orange County action that's been brought on the claims that Alfalfa assigned. Alfalfa paid more money to Lemoon and assigned those claims to Lemoon. And now Lemoon is pursuing recovery in Orange County of the same money that it received from Alfalfa. Well, I assume you're now in that suit going to waive the settlement. I mean, waive it, W-A-V-E, waive it, Adam, and say, here, here's the settlement. We're protected. We would try. The position that's been taken by Alfalfa or, excuse me, by Lemoon here before is that they're standing in the shoes of Alfalfa and nothing having to do with Lemoon makes a difference. And, you know, I just think that the federal court Well, then you can make what I think California calls a counterclaim. Across the way. Across the way, yes. And my final point would be on the equitable side of things. We did cite a case to the court. It's the Hugh Bland case, which deals precisely with the situation where there was a settlement and a recovery of royalties and then a suit against the subsequent distributor. And in that case, the Ninth Circuit, I believe, indicated that at best only nominal damages should be obtained in that situation because of the double recovery issue. Okay. Thank you so very much. Unless you have any further questions. No, and just to make it precise, within 10 days, could the two of you, I assume this is something that won't be in dispute, but plainly a joint letter simply describing what's happened with respect both to this case and the filing in Orange County. We will get that to you within 10 days, Your Honor. Thank you very much.
judges: Tunheim, Canby, Fletcher W.